IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GWENDOLYN A. CRAWFORD (McElrath), | ) ) ) |
| Plaintiff, | ) ) ) CIVIL ACTION NO. 07-G-1681-E |
| v. | ) ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

The plaintiff, Gwendolyn A. Crawford (McElrath), brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;
   (2)   whether she has a severe impairment;
   (3)   whether her impairment meets or equals one listed by the Secretary;
   (4)   whether the claimant can perform her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ James Wendland determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform less than the full range of sedentary work. [R. 24A]. Accordingly, the ALJ found the Plaintiff not to be disabled.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the

alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform her prior relevant work the burden shifts to the Commissioner to establish that she can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if her subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as

6

true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if her pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The ALJ found that the plaintiff's has the "severe" impairments of cervical disc disease and depressive disorder.  [R. 24A].  A consultative examination by the Commissioner's examiner, O. Martin Franklin, D.O., was performed September 11, 2003.  [R. 195-197].  Dr. Franklin stated that the plaintiff injured her cervical and lumbar spine in September 2001 while she was working as a home health aide.  [R. 195].  Dr. Franklin opined that the plaintiff's "[m]edical records are consistent with chronic cervical and lumbar pain, cervical strain and right scapular strain and shoulder strain."  [R. 196].  Specifically, Dr. Franklin found:

> The patient has ***significant spasms*** present in the cervical thoracic and lumbar spine.  ***There is radicular pain most notably in the right side of C4, 5, 6 and 7 with a burning numbing sensation***.  The patient is able to heel-to-toe walk with negative E.H.L. and squat and rise with assistance.  SLR is 90 degrees on the left and 66 degrees on the right secondary to low back pain.
>
> ***Decreased range of motion of the right shoulder secondary to pain in the neck and shoulder***.  The patient has ***poor hand skill secondary to this dysfunction and injury with weakness***.

[R. 197].(emphasis added)  Dr. Franklin's diagnosis was cervical strain with radicular pain and bulging disc, low back pain with spasms, depression, morbid obesity and hypertension.  [Id.].

A consultative mental status examination performed by Charles Rudolph, Ph.D., on September 2, 2003, revealed that the plaintiff suffers from Major Depressive Disorder, Recurrent.  The plaintiff informed Dr. Rudolph that she takes Zoloft 100 milligrams daily, and that it makes her sleepy.  [R. 191].  Dr. Rudolph reported that "[p]rognosis is guarded because of her difficulty carrying a baby to term, long term major depression, and back shoulder and neck injury." [sic] [R. 193].  Dr. Rudolph assigned a GAF[1] of 60.  [Id.].

On October 4, 2004, the plaintiff underwent a CT scan of her cervical spine. Attending physician Robert L. Lawson, M.D., found the following:

> Sagittal reconstruction images were obtained and ***demonstrate reversal of the normal lordosis of the spine.  This may be related to muscle spasm versus positioning***.  Vertebral body heights appear normal.  Intervertebral disc space height loss is seen to involve C4-5, C5-6 and C6-7 levels.  Prevertabral soft tissues appear normal.  The craniovertebral junction appears normal.
>
> At the C2-3 level, no abnormalities are seen.

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR").  A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)"  DSM-IV-TR at 34 (emphasis in original).

8

>   At the C3-4 level, no abnormalities are seen.
>
>   At the C4-5 level, broad-based disc osteophyte complex is seen posteriorly causing a mild-to-moderate degree of canal stenosis. Left sided neural foraminal narrowing is seen secondary to uncovertebral joint hypertrophy and degenerative facet disease.
>
>   At the C5-6 level, broad-based disc osteophyte complex is seen causing a moderate degree of canal stenosis. Right-sided neural foraminal narrowing is seen secondary to uncovertebral joint hypertophy and degenerative facet disease.
>
>   At the C6-7 level, no abnormalities are seen.
>
>   At the C7-T1 level, no abnormalities are seen.

[R. 243-244](emphasis added)

At the ALJ hearing, the plaintiff testified that she has constant neck pain, and while pain medication does dull the pain, it is always there. [R. 363]. The medicine she takes for depression makes her sleepy, so much so that she sleeps up to two hours during the day, every day. [R. 364]. "The best way I can describe [the pain] is it feels like my neck is not going to support my head," she testified. "It feels just extra heavy, and then the numbness and the pain that comes from that." [Id.]. Reading the newspaper exacerbates her neck pain. [R. 366]. She does light housework, but drops things a lot because her "hands will go numb and it feels like, I know that I'm holding something but it'll just, I guess my hands [sic] just releases and I drop things." [R. 367].

The plaintiff has clearly met the Eleventh Circuit's pain standard. The Commissioner's own consulting examiner found that the plaintiff suffers from significant spasms, which are objective evidence of pain itself. In attempting to discredit the

9

plaintiff's pain testimony, the ALJ refers to physical therapy and medication decreasing the plaintiff's pain. [R. 21]. Specifically the ALJ refers to a report by Ferral L. Endsley, D.O., in April 2005, where the plaintiff reported that her pain was a three on a scale of one to 10, down from an eight for her previous visit. [R. 341]. Dr. Endsley supervised the plaintiff's physical therapy from February 2005 to May 2005, when the plaintiff moved to Alabama. [R. 340-343]. In February 2005, she reported her pain to be nine out of 10. [R. 343]. In May, her pain level was eight out of 10. [R. 342]. The court notes that at Dr. Endsley's May 2005 evaluation, the plaintiff's pain had risen to a five on a scale of one to 10. [R. 340]. This relatively short treatment for the plaintiff's pain is not significant enough to warrant the ALJ discrediting the plaintiff's pain testimony, in light of the "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). Therefore, the ALJ's attempts to discredit the plaintiff's pain testimony are not supported by substantial evidence, and the plaintiff's testimony must be taken as true.

      Moreover, the ALJ failed to include pain as a limitation in his questioning of the VE. Because the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's

impairments, the Commissioner has not met his fifth-step burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.

## CONCLUSION

Because the plaintiff meets the three part pain standard, the Commissioner must articulate reasons for refusing to credit the plaintiff's pain testimony. In this case, as noted above, the ALJ's reasons for discrediting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, that testimony must be accepted as true by this court. Hale, 831 F.2d at 1012. The hypothetical questions posed to the VE failed to include the plaintiff's limitations of pain and her need to lie down for up to two hours a day. Therefore, the Commissioner failed to carry his burden at step five of the sequential analysis and the plaintiff is disabled within the meaning of the Social Security Act.

DONE and ORDERED 30 May 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.